1  BRUCE A. HARLAND, Bar No. 230477
   WEINBERG, ROGER & ROSENFELD
2  A Professional Corporation
   1001 Marina Village Parkway, Suite 200
3  Alameda, California 94501
   Telephone  (510) 337-1001
4  Fax  (510) 337-1023
   E-Mail:  bharland@unioncounsel.net
5
   JOSHUA J. ELLISON (*pro hac vice* motion to be filed)
6  COHEN, WEISS AND SIMON LLP
   900 Third Avenue
7  New York, New York 10022-4869
   Tel: (212) 563-4100
8  E-Mail: jellison@cwsny.com

9  Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAVERICK TRAN, RAFAEL ZAMBRANO-LAY, and VICTOR BARRIENTOS, on behalf of themselves and all other individuals similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE,<br><br>Defendant. | No.<br><br>**COMPLAINT**<br><br>**[JURY TRIAL DEMANDED]** |

1

COMPLAINT
Case No.

# COMPLAINT

Plaintiffs Maverick Tran ("Tran"), Rafael Zambrano-Lay ("Zambrano-Lay"), and Victor Barrientos ("Barrientos") (collectively, "Plaintiffs"), on behalf of themselves and as collective action representatives pursuant to 29 U.S.C. § 216, for their collective action complaint, alleges as follows:

## INTRODUCTION

For years, the United States Postal Service ("USPS") has willfully and systematically stolen wages earned by city letter carriers ("Carriers") employed at USPS's facilities in San Jose, California.  Among other things, it has required Carriers to continue to work "off the clock" after their work shifts have ended; has instructed them to submit false time records indicating that their shift ended before it actually had; and has had management officials falsify Carriers' time records without the Carriers' knowledge or permission.  By these actions, USPS deprived the Carriers' of massive amounts of hard-earned overtime wages.

The Carriers' union, the National Association of Letter Carriers, AFL-CIO, challenged USPS's unlawful conduct in an arbitration proceeding under its collective bargaining agreement with USPS.  The arbitrator found that USPS had indeed "improperly altered, deleted and/or falsified Letter Carriers['] Time and Attendance Records" and ordered USPS to take remedial action.  However, while finding USPS culpable of willful misconduct, the Arbitrator limited the possible recovery to less than the Carriers are entitled under the Fair Labor Standards Act ("FLSA").  Plaintiffs bring this action to recover the full amount owed under federal law to them and to other similarly situated Carriers who join the action, including damages for the full period allowed under the applicable three-year statute of limitations, liquidated damages, and attorneys' fees.

## JURISDICTION AND VENUE

The Court has jurisdiction over this action pursuant to 39 U.S.C. § 409(a), as this is an action against USPS.  The Court also has jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) as this is an action for violations of 29 U.S.C. §§ 206-207.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

2

COMPLAINT
Case No.

Venue lies in this District under 28 U.S.C. §1391(b)(1), because USPS resides in this District, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims occurred in this District.

## THE PARTIES

Plaintiffs are Carriers who at all relevant times have been employed by USPS. They are represented for collective bargaining by NALC, a labor union that serves as the collective bargaining representative of a nationwide bargaining unit of Carriers employed by USPS.

Tran resides in San Jose, California. At all relevant times he has been a Carrier employed by USPS. He is a covered employee within the meaning of the FLSA.

Zambrano-Lay resides in San Jose, California. At all relevant times he has been a Carrier employed by USPS. He is a covered employee within the meaning of the FLSA.

Barrientos resides in San Jose, California. At all relevant times he has been a Carrier employed by USPS. He is a covered employee within the meaning of the FLSA.

USPS is an independent establishment of the executive branch of the United States Government. USPS is a covered employer within the meaning of the FLSA.

It operates postal facilities throughout the United States, including twelve in San Jose, California (these twelve facilities are referred to here as the "San Jose Postal Installation").

## COLLECTIVE ACTION ALLEGATIONS

Plaintiffs bring the First and Second Causes of Action as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated persons that worked as Carriers at the San Jose Postal Installation on or after the date that is three years before the filing of this Complaint and who elect to opt-in to this action (the "FLSA Collective Plaintiffs").

At all relevant times Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to USPS' decisions, plans and common policies, programs, practices, procedures, protocols, routines, and rules that willfully failed and refused to pay them at the legally required minimum wage for all hours worked, willfully failed and refused to compensate

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

3

COMPLAINT
Case No.

Plaintiffs and the FLSA Collective Plaintiffs at a rate of one and one half times their regular rate for hours worked in excess of forty (40) hours per workweek, and willfully failed and refused to compensate Plaintiffs for other wages. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

The FLSA Collective Plaintiffs are readily ascertainable. The number and identity of the FLSA Collective Plaintiffs is determinable from the records of USPS. The hours assigned and worked, the positions held, and the rates of pay for each FLSA Collective Plaintiff is also determinable from USPS's records. For the purpose of notice and other purposes related to this action, the FLSA Collective Plaintiffs' names and addresses should be readily available from USPS's records. Notice can be provided to the FLSA Collective Plaintiffs pursuant to 29 U.S.C. § 216(b) via first class mail to the last address known to USPS.

## FACTUAL ALLEGATIONS

### A. LETTER CARRIER WORK

A Carrier's daily work generally consists of two components: office duty and street duty.

Carriers begins their work shift, or "tour," in the morning, at the postal facility where they are stationed. There, Carriers sort, or "case," the mail for their assigned route and perform related office work before leaving to deliver the mail. Casing and office work is expected to take roughly one to two hours per day.

After performing their office work, a Carrier departs the postal facility and spends the bulk of the rest of the eight-hour work shift delivering the mail on a designated delivery route.

After a Carrier has finished delivering the mail, the Carrier returns to the postal facility to complete additional office work. This typically takes at minimum a few minutes and may take longer depending on the volume of undeliverable mail and other factors.

For a variety of reasons, such as high mail volume and difficult weather conditions, Carriers are often unable to complete the sorting and delivery of all the mail on their routes during their eight-hour shift and are thus required to work overtime. Overtime is very common in the San Jose Postal Installation in part because the Installation is short staffed.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

4

COMPLAINT
Case No.

### B.     USPS' TIMEKEEPING POLICIES AND PROCEDURES

USPS utilizes an electronic data management system for tracking employee attendance and work time, known as the Time and Attendance Control System ("TACS")

When Carriers arrive at the postal facility to begin their tour, they "clock in" by swiping an individualized identification badge on an "electronic badge reader," or "EBR."  This action tells TACS that the Carrier's tour has started, and the Carrier has begun working hours for which they should be paid.

When a Carrier leaves the postal facility after office time to begin delivering mail, they again swipe their badge on the EBR, and TACS records that the carrier has performed a "move" to the street based on a button or code that the Carrier inputs into the EBR.

When the carrier has completed mail delivery for the day, they return to the post office and again swipe the badge, indicating to TACS that another move, to the office, has occurred.

Finally, when the Carrier leaves for the day, they swipe their badge one last time, inputs the code for "End Tour," and TACS records their tour as having ended.

TACS generates reports known as "clock rings" that show a variety of data.  As relevant here, they show when a Carrier began his or her tour, when he or she made various "moves," such as leaving the office to go to the street and returning to the office after completing delivery, and when he or she ended the tour for the day.

USPS supervisors are authorized to manually change data in TACS under certain limited circumstances, such as when a Carrier forgets to swipe his or her badge when exiting or leaving the postal facility.  The clock ring also shows whether an entry was generated via a swipe on an EBR or whether it was made manually in TACS.

When a clock ring entry was made in TACS, rather than via an EBR swipe, the clock ring displays the employee identification number of the employee who made the entry, and thus indicates if the entry was made by a supervisor.

Before a supervisor inputs a missing Carrier's time data in TACS, USPS rules require that the Carrier complete a form, known as a Form 1260, authorizing the change.  In addition, per USPS regulations, supervisors are to change time entries to reduce time recorded as worked by a

**WEINBERG, ROGER & ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

5

COMPLAINT
Case No.

Carrier only when the supervisor has knowledge that the Carrier did not in fact work the time recorded.

In addition to TACS, USPS also collects data indicating when a Carrier makes deliveries at certain points along his or her route, known "Managed Service Points" or "MSP." When a Carrier reaches the designated point, he or she uses a handheld scanner to scan a bar code. This allows USPS to track how long it takes a Carrier to complete sections of his or her route.

### C. THE "WINDOW OF OPERATIONS" AND WAGE THEFT AT SAN JOSE

Since at least 2014, the San Jose Postal Installation has had a recurrent issue with USPS supervisors disallowing overtime worked by Carriers such that they do not receive pay for hours they actually work past their normal shift end time.

USPS management has, for years, asserted that it has a policy called "Window of Operations," or "WOO." Management's explanation of and justification for this concept has varied somewhat but the fundamental notion is that all Carrier mail deliveries should be complete by a fixed time of day, by which time all Carriers should have returned to the office. The WOO may vary on a facility-by-facility basis, and at all relevant times, the WOO policy for the San Jose installation was that all Carriers should have completed delivery and returned to the office by 6:00 P.M.

As explained in more detail below, San Jose management's insistence on adherence to the 6:00 P.M. return-to-office time resulted in Carriers not receiving any compensation for hours worked in excess of eight on a particular day, in violation of the FLSA.

The WOO policy also resulted in other falsifications of Carrier time entries that did not result in loss of overtime pay.

This wage theft occurred generally, but not exclusively, in three ways: (i) USPS management pressuring and instructing carriers to work "off the clock," meaning continue to work after having swiped their badge for the end of their tour; (ii) management instructing carriers to complete a Form 1260 to reflect a false end of tour time; and (iii) management entering or manually changing data in the TACS system to reflect that a Carrier's tour ended before the Carrier in fact stopped working.

6
COMPLAINT
Case No.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

As explained further, below NALC's investigation into timekeeping and pay practices at the San Jose Postal Installation revealed additional ways in which USPS failed to pay Carriers for time worked and failed to pay them for overtime at the rate required by the FLSA.

### D.  NALC'S DISCOVERY OF USPS'S WAGE THEFT

In April 2017, NALC representatives received information that raised suspicion that management at the USPS San Jose installation were unlawfully depriving Carriers of overtime.

On April 14, 2017, NALC representatives thus submitted a request for Carrier clock rings for the period April 14, 2014 through April 14, 2017 for all twelve post offices in the San Jose Postal Installation, and on May 2, 2017, USPS provided some Carrier clock rings for that time period.

In addition to reviewing the clock rings, NALC representatives interviewed dozens of San Jose Carriers and supervisors.

NALC's investigation revealed, among other things, that San Jose management had, improperly input "End Tour" codes into TACS for Carriers at times the Carriers were on the street delivering mail.  In addition, NALC's investigation showed that management input End Tour codes for Carriers when Carriers were in the office still performing work.  The investigation further revealed that on many occasions management instructed Carriers to complete Form 1260 to indicate a false end tour time.  The investigation also showed that supervisors improperly input data into TACS indicating that Carriers had taken a lunch break longer than they actually had. All these improper actions by management had the effect of depriving Carriers of wages and overtime in violation of the FLSA.

### THE ARBITRATION

At all relevant times, NALC and USPS have been parties to a collective bargaining agreement (the "National Agreement") that sets forth terms and conditions of employment of City Letter Carriers.

Article 15 of the National Agreement contains a grievance-arbitration procedure under which NALC may demand arbitration of unresolved disputes that arise under the CBA.

Article 8 of the National Agreement establishes 8 hours as the length of the workday of a full-time regular letter carrier. It requires USPS to pay carriers overtime at one and one half times their base hourly rate for all time worked in excess of 8 hours a day or 40 hours in a week.

Article 34 of the National Agreement establishes that the parties agree upon the principle of a fair day's pay for a fair day's pay.

Article 19 of the National Agreement incorporates USPS's handbooks, manuals, and regulations, including USPS's timekeeping procedures, into the National Agreement to the extent they are not contrary to the National Agreement.

In May and August 2017, NALC representatives filed grievances alleging that the above-described conduct by USPS breached the National Agreement.

The May 2017 grievance proceeded to arbitration before Arbitrator Nancy Hutt, who conducted hearings on August 8, 9, and 10 and September 26, 27, and 28 of 2018, and January 28, 29, and 30 of 2019. USPS and NALC agreed that the August 2017 grievance would be settled in accordance with Arbitrator Hutt's resolution of the May 2017 grievance.

Arbitrator Hutt issued an award on September 24, 2019, in which she sustained the grievances. Arbitrator Hutt found that the USPS "improperly altered, deleted and/or falsified Letter Carriers['] Time and Attendance Records in violation of the National Agreement." She ordered the parties to jointly determine the extent of the violations and damages and make all affected Carriers whole. However, the arbitrator limited the monetary remedy to violations that occurred on or after May 2, 2017. She disallowed any recovery for violations that occurred prior to that date. In addition, Arbitrator Hutt did not award interest, liquidated damages, or attorney's fees.

A teleconference with Arbitrator Hutt was held on December 2, 2019, to assess the parties' progress in implementing the awarded remedies.

As of the date of the filing of this Complaint, USPS has provided NALC relevant data for 2017 and through April 2018. It has not provided timekeeping data for May through December of 2018 and has not provided data for 2019 or 2020.

8

COMPLAINT
Case No.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

# USPS'S THEFT OF PLAINTIFFS' WAGES

### A.    USPS'S THEFT OF WAGES FROM TRAN

At all relevant times, Tran was stationed at the Westgate/Tony Cortese postal facility, part of the San Jose Postal Installation.

Review of USPS's clock ring and MSP records for Tran show many instances where Tran began working before 8:00 A.M., and continued working after 6:00 P.M., but management made a manual entry into TACS to indicate that his tour ended at 6:00 P.M. or before.  Tran did not receive any pay for time worked after the fake end tour time entered by management.

Moreover, Tran was regularly pressured, on returning from his route, to swipe his electronic badge to end his tour, and then to complete his end-of-day work such as unloading his truck and processing undeliverable mail, off the clock.

NALC representatives did not review each of Tran's clock rings for the period in question, but those they reviewed show that he was not paid for time he worked on at least seventeen occasions in 2017.

USPS has not provided clock rings for most of 2018, or for 2019 and 2020.  On information and belief, review of those records will reveal additional instances where Tran was not paid for hours worked, and not paid at one and a half times his regular rate for hours worked in excess of 40 in a workweek, in violation of the FLSA.

### B.    USPS'S THEFT OF WAGES FROM ZAMBRANO-LAY

At all relevant times, Zambrano-Lay was stationed at the Blossom Hill postal facility in the San Jose Postal Installation.

Review of the clock ring and MSP records for Zambrano-Lay show many instances where he, like Tran, began working before 8:00 A.M., and continued working after 6:00 P.M.  Clock rings for several of Zambrano-Lay's work days indicate that he had an "End Tour" entry in TACS at the same time as he had a TAC entry for returning from the street to the postal facility.  But it is impossible for his tour to end at the same time that he returned to the facility, or only a few minutes afterward.  Zambrano-Lay, like all Carriers, performed additional work in the office after

9

COMPLAINT
Case No.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

returning from the street. In addition, a supervisor entered a one-hour lunch break for Zambrano-Lay on December 13, 2016, but on that day, he took only the usual half-hour break.

NALC representatives did not review each of Zambrano-Lay's clock rings for the period in question, but those they reviewed indicate that he was not paid for time he worked on at least six occasions in 2016 and 39 occasions in 2017.

On information and belief, review of USPS's records for 2018 and 2019 will reveal additional instances where Zambrano-Lay was not paid for hours worked, and not paid at one and a half times his regular rate for hours worked in excess of 40 in a workweek, in violation of the FLSA.

### C. USPS'S THEFT OF WAGES FROM BARRIENTOS

At all relevant times, Barrientos was a Carrier stationed at the Hillview postal facility in the San Jose Postal Installation. On multiple occasions, USPS management instructed Barrientos not to swipe his identification badge at the end of his work but instead to enter it manually and reflect an end tour time earlier than when he stopped working. On other occasions supervisors manually deleted his end tour time in TACS and input an earlier time.

NALC representatives did not review each of Barrientos' clock rings for the period in question, but those they reviewed indicate he was not paid for time he worked on at least three occasions in 2016 and three occasions in 2017.

On information and belief, review of USPS's records for 2018, 2019, and 2020 will reveal additional instances where Barrientos was not paid for hours worked, and not paid at one and a half times his regular rate for hours worked in excess of 40 in a workweek, in violation of the FLSA

### D. USPS'S THEFT OF WAGES FROM THE OTHER FLSA PLAINTIFFS

NALC's review of clock rings for all of the Carriers stationed in the San Jose Postal Installation showed that for the period May 1, 2017 through November 10, 2017, USPS deprived FLSA Collective Plaintiffs of a total 66.85 hours of pay at their regular rate pay and 1625.50 hours of pay at their overtime rate. During this period the FLSA Collective Plaintiffs earned an hourly rate ranging from $18.10 to $31.23. USPS's clock rings for the period November 11,

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

10
COMPLAINT
Case No.

2017 through December 31, 2017 show that USPS deprived the FLSA Collective Plaintiffs of 10.29 hours of pay at their regular rate and 238.75 hours of pay at their overtime rate. During this period the FLSA Collective Plaintiffs earned an hourly rate ranging from $18.70 to $31.62.

### FIRST CAUSE OF ACTION
**(FLSA Overtime Wages Claim Against All Defendants – Brought by Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs)**

Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

At all relevant times, USPS has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of FLSA 29 U.S.C. § 203.

At all relevant times, USPS has employed "employees" including Plaintiffs and the FLSA Collective Plaintiffs within the meaning of the FLSA.

Sections 6 and 7 of the FLSA, 29 U.S.C. §§ 206 and 207, require that every person covered by the FLSA who is "suffered or permitted to work" must be paid a minimum wage for all hours worked and overtime pay at one and one-half times the person's regular rate for all hours worked in excess of forty hours per week. Section 16(b) of the FLSA, 29 U.S.C. § 216(b), entitles such persons to recover all unpaid wages plus interest, an equivalent amount as liquidated damages, and reasonable attorneys' fees and costs.

At all relevant times, USPS failed to pay Plaintiffs and the FLSA Collective Plaintiffs the lawful minimum hourly wage for all hours worked in violation of 29 U.S.C. § 206(a).

USPS's failure to pay Plaintiffs and the FLSA Collective Plaintiffs the lawful minimum hourly wage was willful. USPS was aware or should have been aware that the practices described herein were unlawful. As set forth above, however, USPS has not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective Plaintiffs.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

11
COMPLAINT
Case No.

1  Accordingly, Plaintiffs and the FLSA Collective Plaintiffs are entitled to recover from
2  USPS their unpaid minimum wages, liquidated damages, pre- and post-judgment interest and the
3  reasonable attorneys' fees and costs of the action, pursuant to the FLSA, all in an amount to be
4  determined at trial pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**(FLSA Overtime Wages Claim Against All Defendants – Brought by Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs)**

Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

At all relevant times, Plaintiffs and the FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per workweek.

At all relevant times, Defendants have operated under a decision, policy, and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay Plaintiffs and the FLSA Collective Plaintiffs at a rate of at least one and one half times their regular rate for all hours worked in excess of forty (40) hours per workweek in violation of 29 U.S.C. § 207(a)(1).

USPS's failure to pay Plaintiffs and the FLSA Collective Plaintiffs the lawful overtime wage rate was willful. USPS was aware or should have been aware that the practices described herein were unlawful. USPS has not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective Plaintiffs.

Accordingly, Plaintiffs on behalf of themselves and the FLSA Collective Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, as well as reasonable attorneys' fees and costs of the action, pursuant to the FLSA, all in an amount to be determined at trial pursuant to 29 U.S.C. § 216(b).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs pray that the Court:

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

12
COMPLAINT
Case No.

1. Designate this action as a collective action on behalf of the FLSA Collective Plaintiffs and promptly issue notice pursuant to 29 U.S.C. § 216(b) to all similarly-situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216 (b);

2. Award, according to proof:

    a. Compensatory damages in the amount of unpaid minimum wages and overtime.

    b. In addition to compensatory damages, liquidated damages in the amount of unpaid minimum wages and overtime;

    c. Declaratory and injunctive relief;

    d. Costs of the action incurred herein, including expert fees;

    e. Attorneys' fees, including fees pursuant to 29 U.S.C. § 216;

    f. Pre-judgment and post-judgment interest, as provided by law; and

Such other and further relief as this Court deems appropriate, just and proper.

Dated:  February 3, 2020

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

    /s/ BRUCE A. HARLAND
By: BRUCE A. HARLAND

COHEN, WEISS AND SIMON LLP

Dated:

By: JOSHUA J. ELLISON
*(pro hac vice motion to be filed)*

***Attorneys for Plaintiffs***

148975\1067115

**WEINBERG, ROGER & ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

13

COMPLAINT
Case No.